**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

**THEODORE BELL, et al.,**

    **Plaintiffs,**

**v.**

**PLYMOUTH ROCK TRANSPORTATION**
**CORPORATION, et al.,**

    **Defendants.**

---

04-CV-1354 (WJM)

**OPINION**

Jeffrey S. Goldstein, Esq.
Gallo, Geffner & Fenster, P.C.
West 115 Century Road
Paramus, NJ 07652

    *(Attorneys for Plaintiffs)*

Paulette Brown, Esq.
Bruce Kasten, Esq.
Duane Morris LLP
744 Broad Street., Suite 1200
Newark, NJ 07110

    *(Attorneys for Defendant Plymouth Rock Transportation)*

**MARTINI, U.S.D.J.:**

    This matter comes before the Court on Defendant Plymouth Rock Transportation's

("Plymouth's") Motion for Summary Judgment seeking to dismiss Plaintiffs' Second Amended

Complaint.[1]  For the reasons set forth below, Plymouth's Motion for Summary Judgment is **GRANTED**, Plymouth's Motion for Attorney's Fees is **GRANTED**, and the Second Amended Complaint is **DISMISSED** with prejudice in its entirety.

## BACKGROUND

Plaintiffs, former employees of Plymouth, filed this action on March 23, 2004 under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 et seq. (2000).  Plaintiffs allege that on or about April 11, 2003, Defendants[2] gave Plaintiffs notice that Plymouth's Jersey City, New Jersey facility, at which they were employed, would be shut down and that they would be laid off six days later on April 17, 2003.  (2d Am. Compl. ¶¶ 7-8.)  Count One of the two-count Second Amended Complaint alleges that Plaintiffs' termination violated the WARN Act's sixty day notice requirement and seeks to recover from Defendants back wages and sick pay, as well as vacation, health, and other benefits.  (*Id.* ¶¶ 8-10.)  In Count Two, Plaintiffs ask this Court to find that Defendants function as alter egos of one another such that they should be treated as one entity for purposes of liability in this case.[3]  (*Id.* ¶¶ 10-13.)

In November 2004, Defendant Plymouth and then Defendant Ronald Cort moved to

---

[1] Although Plaintiffs filed the Second Amended Complaint subsequent to Plymouth's filing the instant motion, because both parties address the Second Amended Complaint in their moving papers, this Court treats it as having superseded the First Amended Complaint.

[2] In their Second Amended Complaint, Plaintiffs named as Defendants Plymouth, Puritan Packing Corporation ("Puritan"), and John Does 1-10.  This Court hereinafter refers to these parties collectively as "Defendants."

[3] Plaintiffs allege John Does 1-10 are entities having "common control and/or ownership with Plymouth."  With the exception of Puritan, Plaintiffs have failed to identify any such entity by name.

dismiss Plaintiffs' Amended Complaint.[4]  In a letter opinion dated December 16, 2004, this Court granted Plymouth and Cort's motion to dismiss all claims against Cort and denied their motion to dismiss all claims against "John Doe" Defendants.  (Letter Op. 4.)  This Court also denied without prejudice Plymouth and Cort's motion for attorney's fees and reserved decision on their motion to strike Plaintiff's jury demand.  (*Id.*)  In the same opinion, this Court denied Plaintiffs' motion for a preliminary injunction and temporary restraining order.  (*Id.*)

Plymouth now moves for summary judgment to dismiss the claims asserted against it.[5]  It contends that Plaintiffs cannot sustain a claim under the WARN Act because they cannot show that the requisite number of employees suffered an employment loss at the Jersey City facility. Plymouth also contends there is no evidence in the record to support an alter ego theory so as to warrant piercing of its corporate veil.  Finally, Plymouth seeks to strike Plaintiffs' jury demand and moves for attorney's fees.

## ANALYSIS

### I.    Summary Judgment Standard

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and

---

[4] Although Cort was named as a Defendant in the original Complaint and First Amended Complaint, Plaintiffs did not name him in the Second Amended Complaint filed on July 28, 2005.

[5] Although this Summary Judgment motion was filed on behalf of Plymouth and Cort, since Cort is not a named Defendant, *see supra* note 3, this Court will refer to Plymouth as the movant.

3

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex*, 477 U.S. at 323. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *Id.* at 249.

## II.    Plaintiffs Fail to Show Plymouth Employed the Requisite Number of Employees so as to Trigger the WARN Act

For Plaintiffs to sustain a claim under the WARN Act, they must show that (1) at least fifty employees, not including part-time employees, (2) at a single site of employment (3) suffered an employment loss (4) within a thirty day period. *See* 29 U.S.C. §§ 2101-2102. If

4

those criteria are met, the WARN Act dictates that an employer must have given sixty days advance notice before terminating employment. *See* 29 U.S.C. §§ 2101(a)(2)-(a)(3), § 2102(a). To consider an employee "full-time" under the statute, the employee must have averaged at least twenty hours per week in the ninety days preceding the date when notice is required and worked at least six of the preceding twelve months. *See* 29 U.S.C. § 2101(a)(8). If an employee does not meet this threshold, he is considered a "part-time" employee and is not included among those employees who have suffered an employment loss. *Moore v. Warehouse Club*, 992 F.2d 27, 30 (3d Cir. 1993).

The parties agree that most if not all of the employees were laid off on April 17, 2003. Accordingly, the date on which notice was required ("notice date"), if at all, would have been February 17, 2003, and the ninety day period for assessing whether an employee had averaged twenty or more hours per week runs from November 18, 2002 through February 17, 2003.

### a)  Of Sixty-Seven Alleged Plymouth Employees, Forty-Three were Full-Time Employees as of the Notice Date

Plaintiffs argue that sixty-seven people worked at the Jersey City facility on February 17, 2003.[6] (Pls.' Opp'n Br. at 3; *see also* Goldstein Aff., Ex. B.) Of these sixty-seven employees, the parties agree that forty-three were full-time employees for purposes of the WARN Act, leaving twenty-four disputed employees. (Def.'s Reply Br. at 8.) For Plaintiffs to demonstrate that the requisite fifty full-time employees worked at the Jersey City facility, then, they must

---

[6] Of these sixty-seven employees, Plaintiffs' filings suggest that eleven may have been employees of Puritan rather than Plymouth. Plaintiffs argue, however, that even if this were true, this Court should treat these eleven as Plymouth employees because Puritan operated as Plymouth's alter ego. This Court finds it unnecessary to rule on this theory since even if it were to treat these eleven employees as Plymouth employees, Plaintiffs' claim would fail.

demonstrate that at least seven of the twenty-four disputed employees were full-time employees under the statute.

**b)** **Seventeen of the Twenty-Four Disputed Employees Worked Part-Time**

The record indicates that seventeen of the twenty-four disputed employees do not meet the statutory definition of a full-time employee under the WARN Act.  Plymouth's Earnings and Hours Statement, as submitted by Plaintiffs, demonstrate that these employees either averaged fewer than twenty hours per week during the ninety-day period preceding the notice date or worked fewer than six out of the twelve months preceding the notice date.[7]  (Goldstein Aff., Ex. E.)  As such, they do not count toward the fifty employee minimum.

**c)** **One of the Remaining Seven Disputed Employees Worked as an Independent Contractor or Non-Employee**

Of the remaining seven disputed employees, Woodrow Gaddy was not employed by Plymouth.  No employee records indicate that Plymouth, or Puritan for that matter, ever employed Gaddy.  The only evidence pointing to an association between Gaddy and Plymouth is Gaddy's 1099-MISC tax form for  "nonemployee compensation."  (*See* Goldstein Aff., Ex. I.) And although Plaintiffs submitted W-2 forms for every other alleged Plymouth employee, they could produce none for Gaddy.  Because Plaintiffs cannot put forth evidence to show that Gaddy worked for Plymouth, he does not count toward the fifty full-time employee requirement under

---

[7] Five employees averaged fewer than twenty hours per week during the ninety-day period from November 18, 2002 to February 17, 2003: Gary Alt, Henry Austin, Shadeera Franklin, Denise Hernandez, and Frank Raczynski.  (*See* Goldstein Aff., Ex. E.)  Twelve employees were employed at the site of employment fewer than six out of twelve months preceding the notice date: Mary Cardillo, Bryant Culver, Edward Day, Raymond M. Figarella, Naquan Hill, Cynthia A. Mura, Armando Piedra, Frederick L. Potter, Fred F. Racavich, William B. Seeger, Kenneth Shellhamer, and Dennis G. Whipple.  (*See id.*)

the WARN Act.

### d) One of the Remaining Seven Disputed Employees Ceased Work Prior to the Notice Date

The record indicates that Miguel Cintron ceased employment at Plymouth's Jersey City

facility on January 18, 2003, approximately one month before the February 17, 2003 notice date.

Because Cintron did not work at the Jersey City facility when the WARN Act would have

required notice, he does not qualify as an employee under the statute.

### e) Plaintiffs Cannot Prove that the Remaining Five Disputed Employees were Full-Time Employees

Of the remaining five disputed employees,[8] Plaintiffs have submitted no evidence of their

hours worked, months worked, or general timeline of employment.  Plymouth's Earnings and

Hours Statement contains no reference to any of them, much less their status as full-time

employees.  (*See* Goldstein Aff., Ex. E.)  Moreover, even if Plaintiffs could show that these five

individuals worked for Plymouth full-time, they would still fail to meet the fifty employee

threshold, since including these five employees would only yield forty-eight full-time employees.

On these facts, even when viewed in the light most favorable to Plaintiffs, Plaintiffs

cannot show there exists a genuine issue of material fact with regard to whether Plymouth

employed at least fifty full-time employees.  *See Moore v. Warehouse Club, Inc.*, 1992 U.S. Dist.

LEXIS 2111, at *1 (W.D. Pa. July 27, 1992) (granting summary judgment where plaintiff could

not establish employment loss for at least fifty full-time employees under WARN Act).  As such,

this Court grants summary judgment in favor of Plymouth as to the First Count of Plaintiffs'

---

[8] Aubrey Griffith, Timothy Howard, Scott McGovern, William McMannus, and Harry Murdock.

Second Amended Complaint.

### III.  Plaintiffs Cannot Support a Claim for Piercing the Corporate Veil

In the Second Count of their Second Amended Complaint, Plaintiffs seek to hold all Defendants jointly and severally liable for the judgment in this matter using a corporate veil-piercing theory of liability.  (2d Am. Compl. ¶¶ 10-13.)  Because Plaintiffs' Second Count is predicated on a violation of the WARN Act, and given this Court's determination that Plaintiffs cannot sustain a claim under the Act, this Court dismisses the Second Count of Plaintiffs' Second Amended Complaint.

### IV.  Plaintiffs' Request For Restoring Ronald Cort As An Individual Defendant is Improper

Plaintiffs also ask in their moving papers that this Court restore Ronald Cort as an individual Defendant.  (*See* Pls.' Br. at 8.)  Plaintiffs never named Cort as a Defendant in their Second Amended Complaint.  Moreover, Cort has no liability under the WARN Act as a matter of law since, as detailed in our Letter Opinion of August 23, 2004, he is an individual and not a business enterprise.  (*See* Letter Op. 3-4.)  As such, this Court denies this motion.

### V.  Plymouth is Entitled to Reasonable Attorney's Fees

Plymouth has renewed its previously denied request for attorneys fees in connection with this litigation.  The WARN Act provides that "the court, in its discretion, may allow the

prevailing party a reasonable attorney's fee as part of the costs."  29 U.S.C. § 2104(a)(6).  The Third Circuit has ruled that, in awarding attorney's fees under the WARN Act, the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *United Steelworkers of America v. North Star Steel Co.*, 5 F.3d 39, 44 (3d Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).[9]  Because this Court does not find any special circumstances for denying Plymouth's request, the motion for attorney's fees is granted.

## VI.   Conclusion

In light of the aforementioned analysis, Plymouth's motion for summary judgment is **GRANTED**, Plymouth's request for attorney's fees is **GRANTED**, and the Second Amended Complaint is **DISMISSED** with prejudice in its entirety.

**Dated:** November 21, 2005

s/ William J. Martini

**William J. Martini, U.S.D.J.**

---

[9] The Court has difficulty understanding why Plymouth failed to bring this controlling holding to the Court's attention and why Plymouth instead argued for attorney's fees on the basis of a "frivolousness" standard.

9